**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                    7:20-cv-00594

| | |
|---|---|
| William Batchelor, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>The Coca-Cola Company,<br><br>Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Coca-Cola Company ("defendant") manufactures, distributes, markets, labels and sells iced tea beverages purporting to be low in sugar under their Honest brand ("Products").

2.      The Products are available to consumers from retail and online stores of third-parties and defendant's website and are sold in bottles in sizes including 16.9 OZ (500 ML).

3.      The relevant front label statements include "JUST A TAD SWEET," the brand name, "Honest," statement of identity, i.e., Peach Tea and a vignette of a peach.

 

4.     The Product's other panels contains the Nutrition Facts and ingredient list.



I.     Implied Nutrient Content Claim of "Low Sugar" is Prohibited and Misleading

5.     The representations as to being "just a tad sweet" are understood by consumers to indicate the Products are "low sugar."

2

6.     Though the Products make no explicit "low sugar" claim, "Just a Tad Sweet" is an implied nutrient content claim.

7.     Representations that characterize the level of a nutrient are specifically limited and can only be made in accordance with an authorizing regulation.  21 U.S.C. § 343(r)(2)(A).

8.     The purpose of the nutrient content claims for sugar was to prevent consumers being deceived when the absence (or minimal amount) of sugars does not indicate "a product which is low in calories or significantly reduced in calories."  21 C.F.R. § 101.60(c)(1).

9.     21 C.F.R. § 101.13 ("general principles") provides a framework for types of nutrient content claims that are further fleshed out in separate regulations.  21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

10.     These regulations set the boundaries of when "[A] claim about the calorie or sugar content of a food may [only] be made on the label.  21 C.F.R. § 101.60(a).  Specifically, claims for the absence of ("no…"), and relative ("fewer calories," "less sugar") amounts, of calories and sugar, are authorized, but a straight "low sugar" claim is specifically absent.

|          | Calorie Claims[1] | Sugar Claims[2] |
|----------|-------------------|-----------------|
| Absence  | No Calories       | No Sugar        |
| Relative | Fewer Calories    | Less Sugar      |
| Low      | Low Calories      | X               |

11.     Because "low sugar" claims have never been authorized, they are prohibited.  58 Fed. Reg. 2302, 2368 ("The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.").

12.     The FDA has issued warning letters to companies making "low sugar" claims:

---

[1] 21 C.F.R. § 101.60(b)
[2] 21 C.F.R. § 101.60(c)

The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…")

FDA Warning Letter to CK Management, Inc., May 19, 2015

13.    Because the Products are promoted as "just a tad sweet" ("low sugar") and not "no sugar" or "sugar free," it falls outside of claims considered by the relevant authorities.

14.    No requirement exists to compel the Products to represent or allude to their sugar content on the front label, as opposed to the requirement it be present in the nutrition facts, so it can be viewed in context alongside the total calories and carbohydrates.

II.    Low Sugar is Associated with Calorie Reduction and Weight Control

15.    Low sugar products are generally marketed towards consumers seeking products that are useful in "weight control," through consumption of fewer calories.

16.    Reasonable consumers "clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content."  N. J. Patterson et al., "*Consumer understanding of sugars claims on food and drink products.*" Nutrition bulletin 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories.").

17.    As "maintaining a healthy body weight became more scientifically supported and accepted as public health and individual goals, it was no longer accurate that they be described in connection with "special dietary uses."  56 Fed. Reg. 229, 60421 at 60457 ("Consequently, the agency is proposing to place requirements for terms such as "low" and "reduced calorie," comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60").

18.    In fact, 21 CFR 105.66 originally included "terms such as low calorie, 'reduced

4

calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight."  56 Fed. Reg. 229, 60421 at 60457, Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms (Nov. 7, 1991) (21 CFR Parts 5, 101, and 105); FDA, Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims, Sept. 2007 ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

19.   When consumers observe the Products' front-label representations which highlight the "Just a Tad Sweet" claim, they will reasonably believe the Products are lower in calories and than they are, as indicated on the nutrition facts below.

## Nutrition Facts

| Serv. Size | 1 Bottle |
|---|---|

| Amount Per Serving | | |
|---|---|---|
| **Calories** | **60** | |

| | | % Daily Value |
|---|---|---|
| **Total Fat** 0g | | 0% |
| **Sodium** 0mg | | 0% |
| **Total Carb.** 16g | | 6% |
| Total Sugars 16g | | |
| Incl. 15g Added Sugars | | 30% |
| **Protein** 0g | | |

20.   According to a well-respected consumer nutrition advocacy group, the Peach Tea Product is especially deceptive because it contains:

> 36 percent of the DV (daily value) for added sugars per Reference Amount Customarily Consumed (RACC). Such claims are not only violative, but also particularly misleading, and pose a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as

Type 2 diabetes.[3]

21.    Far from being a "tad sweet" and low in sugar, sugar is the second most predominant ingredient in the Product by weight.



**INGREDIENTS:** ORGANIC BREWED TEA (FILTERED WATER, FAIR TRADE CERTIFIED™ ORGANIC OOLONG AND BLACK TEA LEAVES), FAIR TRADE CERTIFIED™ ORGANIC CANE SUGAR, ORGANIC PEACH PUREE, ORGANIC AGAVE SYRUP, NATURAL AND ORGANIC FLAVORS, CITRIC ACID.

III.    Increasing Consumer Avoidance of Sugar and Sweetened Food and Beverages

22.    In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[4]

23.    The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[5]

24.    There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of

---

[3] Center for Science in Public Interest Letter to Director, Center for Food Safety and Applied Nutrition, January 9, 2020.
[4] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[5] *Id.*

6

certain cancers' relationship to obesity."[6]

25.    In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[7]

26.    At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

27.    In August, 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[8]

28.    As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products  in   the  coming  year.    .     ."[9]

29.    Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[10]

30.    The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85%

[6] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[7] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[8] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[9] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[10] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018

are doing so for health reasons and 58% for weight concerns."[11]

IV.    Conclusion

31.    Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud consumers.

32.    The amount of sugar or other caloric sweetening ingredients has a material bearing on price or consumer acceptance of the Products because their absence causes consumers to pay more for such Products..

33.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

34.    Defendant's false, deceptive, and misleading branding and packaging of the Product has enabled defendant to sell more of the Product and at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35.    The value of the Product that plaintiff actually purchased and consumed was materially less than its value as represented by defendant.

36.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

37.    The Product contains other representations which are misleading and deceptive.

38.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

---

[11] *Id.*

39.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

40.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

41.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

42.     This is a reasonable assumption because the Products are sold in stores across the nation and have been sold bearing the allegedly misleading claims for several years.

43.     Plaintiff is a citizen of New York.

44.     Defendant is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia and is a citizen of Georgia.

45.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

46.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

47.     A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

48.     Plaintiff is a citizen of Red Hook, Dutchess County, New York.

49.     During the relevant statutes of limitations, plaintiff purchased the Product for personal consumption within this district and/or State.

50.     Plaintiff paid more for the Products than he otherwise would have if the Products did

not have the misleading representations.

51.    Plaintiff paid a premium price for the Products because prior to purchase, plaintiff saw and relied on the misleading representations.

52.    Plaintiff would purchase the Products again if he were assured the representations were no longer misleading.

53.    Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

<u>Class Allegations</u>

54.    The classes will consist of all consumers in New York, the other 49 states and a nationwide class where applicable.

55.    Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff and if plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

57.    Plaintiff is an adequate representative because his interests do not conflict with other members.

58.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

61.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

64.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

65.    Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products to are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.[12]

66.    Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

67.    Plaintiff incorporates by reference all preceding paragraphs.

68.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

69.    Defendant had a duty to disclose and/or provide non-deceptive labeling of the

---

[12] CSPI Letter, page 7.

11

Product and its components and ingredients, and knew or should have known same were false or misleading.

70.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

71.    The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

72.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

73.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq.</i></u>

74.    Plaintiff incorporates by reference all preceding paragraphs.

75.    Defendant manufactures and sells products which purportedly are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

76.    The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

77.    Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

78.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

79.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

80.   Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

81.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

82.   Plaintiff and class members relied on the claims, paying more than they would have.

Fraud

83.   Plaintiff incorporates by references all preceding paragraphs.

84.   Defendant's purpose was to sell a products that are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

85.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label.

86.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

87.   Plaintiff incorporates by reference all preceding paragraphs.

88.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 23, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-00594
United States District Court
Southern District of New York

William Batchelor, individually and on behalf of all others similarly situated,

                                       Plaintiff,

       - against -

The Coca-Cola Company,

                                        Defendant

---

## Class Action Complaint

---

```
            Sheehan & Associates, P.C.
             505 Northern Blvd., #311
               Great Neck, NY 11021
               Tel: (516) 303-0552
               Fax: (516) 234-7800
```

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  January 23, 2020

                                               /s/ Spencer Sheehan
                                               Spencer Sheehan